FILED
United States Court of Appeals
Tenth Circuit

October 24, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

GABRIEL JOHN SEDILLO, SR.,

        Petitioner-Appellant,

v.

TIM HATCH, Warden,

        Respondent-Appellee.

No. 10-2163
(D.C. No. 1:06-cv-00640-WJ-WPL)
(D.N.M.)

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.

      Petitioner-Appellant Gabriel John Sedillo, Sr., a state prisoner, seeks a

certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(1)(A) so that

he may challenge the district court's denial of his petition for a writ of habeas

corpus under 28 U.S.C. § 2254. Exercising jurisdiction under 28 U.S.C. § 1291,

we hold that reasonable jurists could not disagree with the district court's

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

      After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

rejection of Mr. Sedillo's petition.  Accordingly, we deny his application for a COA and dismiss his appeal.

## BACKGROUND

On May 22, 2003, a New Mexico jury convicted Mr. Sedillo of one count of murder in the first degree and three counts of evidence tampering.  After being sentenced to life in prison, Mr. Sedillo filed a direct appeal to the New Mexico Supreme Court, raising numerous grounds of error.  Among those grounds, he alleged that the state district court erred in refusing to strike a juror for cause due to the fact that she had previously been employed by the prosecutor who conducted the voir dire at trial.  The court denied his averments of error, and affirmed his conviction and sentence.

Mr. Sedillo then filed a motion collaterally attacking his conviction in New Mexico state district court.  He raised a number of claims, including various allegations of ineffective assistance of counsel.  The state district court summarily dismissed his petition, and the New Mexico Supreme Court denied a subsequent request for a writ of certiorari

Mr. Sedillo next filed a petition for a writ of habeas corpus in the United States District Court for the District of New Mexico.  On February 12, 2007, the magistrate judge issued a comprehensive report, recommending that the district court dismiss Mr. Sedillo's petition with prejudice.  Liberally construing Mr. Sedillo's pleadings, the magistrate judge concluded that his federal petition raised

many of the same claims as his state direct appeal and collateral petition, notably including Mr. Sedillo's contention that the state district court erred in refusing to strike an allegedly biased juror. Importantly, the magistrate judge also construed Mr. Sedillo's filing as stating a claim that his counsel failed to properly investigate a potential alibi witness—Yvette Chacon.

The magistrate judge originally recommended that the latter alibi claim be dismissed for lack of detail. However, Mr. Sedillo filed objections to the report and provided a more detailed contextual basis for the claim. He essentially alleged that Ms. Chacon's testimony would have placed him at a different location at the time that the murder and subsequent cover-up events occurred. The district court remanded the matter back to the magistrate judge, who appointed counsel for Mr. Sedillo and held a hearing on the matter. Subsequently, Mr. Sedillo filed an amended petition, appearing to set forth an additional claim—*viz.*, that counsel was ineffective for failing to investigate *and* secure the testimony of the alibi witness. The district court, on agreement of the parties, stayed the matter, and held the petition in abeyance, permitting Mr. Sedillo to return to state district court in order to exhaust this claim.

After the stay was issued, the state district court considered Mr. Sedillo's claim. Following an evidentiary hearing, the court issued factual findings, which established the following. At trial, the State's position was that, on the day of the murder, Mr. Sedillo, Luis Rosales and the victim left Sam Martinez's Bayard,

-3-

New Mexico, automotive repair shop in a Chevrolet Blazer. The court found that the trial testimony of Mr. Martinez established that Mr. Sedillo had returned with the Blazer—and without the victim—"three to four hours later at around 4:30 p.m. to 5:30 p.m." when it was "still light outside." R., Vol. I, at 644 (Order Den. Relief Based on Claim of Ineffective Assistance of Counsel, filed July 31, 2009). When the vehicle returned, Mr. Martinez testified that he found out the victim had been murdered by Mr. Sedillo and Mr. Rosales.

At the evidentiary hearing, Ms. Chacon testified that she and Mr. Sedillo "talk[ed] . . . for '15 *maybe* 20 minutes' outside of a residence around 4:00 p.m. *OR* 5:00 p.m." *Id.* at 643 (quoting testimony of Yvette Chacon). Ms. Chacon claimed that she had been drinking alcohol throughout the day, and that the "residence" to which she referred "'could have been an auto repair shop.'" *Id.* (quoting testimony of Yvette Chacon). Mr. Sedillo argued that her testimony effectively contradicted the State's version of the events that day in that it tended to show that he had never left the shop at times material to the murder.

The state district court denied Mr. Sedillo's ineffective assistance of counsel claim on the ground that failure to call Ms. Chacon to testify was not objectively unreasonable because she had failed to cooperate after two attempts by counsel to find out what she knew. Further, the court concluded that Mr. Sedillo had not shown that counsel's failure to obtain Ms. Chacon's testimony, even if unreasonable, would have changed the result of his trial. On appeal, the

-4-

Supreme Court of New Mexico denied Mr. Sedillo's petition for a writ of certiorari.

Upon Mr. Sedillo's return to federal court, the magistrate judge issued a new report on the alibi claim, finding first that Mr. Sedillo could not rebut the state district court's factual findings by clear and convincing evidence. He then recommended that the claim be dismissed because Mr. Sedillo could not "show that trial counsel knew anything about the potential content of Chacon's testimony that would make counsel's failure to subpoena her unreasonable and that, even if counsel's performance was objectively unreasonable, Sedillo had not demonstrated prejudice." *Id.* at 763 (Dist. Ct. Order Adopting Mag. J. Prop. Findings & Recommended Disposition, filed July 13, 2010). The district court adopted the magistrate judge's report and denied a COA. Mr. Sedillo filed a timely notice of appeal.

## STANDARD OF REVIEW

A COA is a jurisdictional prerequisite to our review of a habeas application. 28 U.S.C. § 2253(c)(1)(A); *accord Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). "We will issue a COA 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (quoting 28 U.S.C. § 2253(c)(2)). To satisfy this standard, "an applicant must demonstrate 'that reasonable jurists could debate

-5-

whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[F]ull consideration of the factual or legal bases adduced in support of the claims" is not required. *Miller-El*, 537 U.S. at 336. Rather, our inquiry on habeas review requires "an overview of the claims . . . and a general assessment of their merits." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further limits our review of federal habeas claims adjudicated on the merits in state-court proceedings. *See* 28 U.S.C. § 2254(d)(1)–(2). The New Mexico state courts addressed Mr. Sedillo's claims on the merits. Consequently, he is entitled to federal habeas relief only if he can show that the state courts' adjudication either "resulted in a decision that was contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court[,] . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

While we review the district court's legal analysis of the state-court decision de novo, *Welch v. Workman*, 639 F.3d 980, 991 (10th Cir. 2011), our COA inquiry will incorporate AEDPA's deferential treatment of that decision, *see Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004); *see also Charlton v.*

*Franklin*, 503 F.3d 1112, 1115 (10th Cir. 2007). Thus, in order for Mr. Sedillo to obtain a COA, he must show that reasonable jurists could debate the district court's determination that he was not entitled to relief in light of the standards embodied in AEDPA. *See Dockins*, 374 F.3d at 937.

## DISCUSSION

Mr. Sedillo requests a COA on two issues. First, he contends that reasonable jurists could debate the correctness of the district court's rejection of his claim that his counsel was ineffective for failing to adduce and secure the testimony of Ms. Chacon (i.e., the purported alibi witness) at trial. Second, he claims that the district court applied the wrong legal standard in deferring to the New Mexico Supreme Court's determination regarding the alleged partiality and bias of a juror at trial.

## A.    Ineffective Assistance of Counsel

Because Mr. Sedillo's first claim rests on an allegation of ineffective assistance of counsel, we apply the framework articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). "Under *Strickland*, [a petitioner] must show that counsel's performance fell below an objective standard of reasonableness as measured against prevailing professional norms, and he must show that there is a reasonable probability that the outcome would have been different but for counsel's inadequate performance." *Sandoval v. Ulibarri*, 548 F.3d 902, 909 (10th Cir. 2008) (citing *Strickland*, 466 U.S. at 688). "Surmounting *Strickland*'s

-7-

high bar is never an easy task," *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)) (internal quotation marks omitted), and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" in light of AEDPA's highly deferential standard of review, *id.* at 788.

In applying the principles in *Strickland*, "[c]ourts may address the performance and prejudice components in any order and need not address both if a [petitioner] fails to make a sufficient showing of one." *Cannon v. Gibson*, 259 F.3d 1253, 1273 (10th Cir. 2001) (second alteration in original) (quoting *Hale v. Gibson*, 227 F.3d 1298, 1314 (10th Cir. 2000)) (internal quotation marks omitted). Here, we elect to resolve Mr. Sedillo's request for a COA by addressing the performance prong of *Strickland*.

Mr. Sedillo challenges the district court's denial of his claim that his attorney was ineffective for failing to subpoena Ms. Chacon, allegedly a potential alibi witness. In resolving this claim, the magistrate judge found, and the district court agreed, that Mr. Sedillo had not rebutted the presumption of correctness that attached to the state district court's factual findings. The district court further concluded that Mr. Sedillo "ha[d] not offered any evidence to suggest that his counsel knew the importance of Chacon's testimony[,] . . . [and w]ithout knowing what [she] might say on the witness stand, and without any evidence from Sedillo regarding what he thought [she] might say on the witness stand, defense counsel's

failure to subpoena her simply cannot be considered unreasonable." R., Vol. I, at 764.

On appeal, Mr. Sedillo claims that the district court's conclusion is flawed for essentially three reasons. First, he contends that he has sworn that Ms. Chacon could have been an alibi witness twice in his verified pleadings. Second, he suggests that he conveyed to his counsel the probative value of her testimony. As proof, he points to an e-mail sent by defense investigator Carlos Herrera to his counsel, which states: "We spoke briefly about his 'alibi' and how to prove it. [Mr. Sedillo] stated that the only people who could say he was at the shop that afternoon are Peter [Alcorta] and Yvette [Chacon]." *Id.* at 278 (E-mail from Carlos Herrera to Devon M. Fooks and Jeffrey Buckels, dated Apr. 4, 2003). Finally, he claims that his attorneys did, in fact, unsuccessfully send investigators to talk to Ms. Chacon on two separate occasions. Because it is uncontested that Ms. Chacon was not an eyewitness to the murder itself, Mr. Sedillo concludes that the only reason his counsel would have had any interest in her testimony would have been for purposes of an alibi.

As a general matter, the allegations in Mr. Sedillo's habeas filings offer little evidence as to what counsel knew before or during trial. At the most, they represent Mr. Sedillo's own legal theory and assessment of the probative value of Ms. Chacon's testimony. Thus, they cannot serve as cogent evidence of counsel's knowledge of the content of that testimony.

Additionally, Investigator Herrera's e-mail was part of a set of notes that Mr. Sedillo did not introduce at the state evidentiary hearing. Our "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Mr. Sedillo does not directly challenge the magistrate judge's account of the state district court's finding that "[these] notes were not offered into evidence and were not made part of the record at the evidentiary hearing." R., Vol. I, at 738 n.4 (Mag. J. Second Prop. Findings & Recommended Disposition, filed Apr. 28, 2010). Thus, we do not consider this evidence on appeal.[1]

Further, that counsel unsuccessfully tried to contact Ms. Chacon to see what she knew does not establish knowledge of the contents of her potential testimony. Counsel was ostensibly conducting a thorough investigation of all potential witnesses. At the evidentiary hearing, Ms. Chacon testified that she

---

[1]   Furthermore, the magistrate judge also properly reasoned that, even assuming that the investigator's notes could be considered, their probative value is far from dispositive. Mr. Sedillo does not now challenge counsel's failure to investigate Ms. Chacon's testimony—only counsel's failure to secure her testimony by subpoena. It was the State's position that Mr. Sedillo was in fact at Mr. Martinez's shop on the day of the murder, but left and returned after he committed the crime and tried to eliminate any evidence of it. Thus, a mere hollow statement that "the only people who could say [Mr. Sedillo] was at the shop that afternoon are Peter [Alcorta] and Yvette [Chacon]" does not imply that Ms. Chacon would testify that he never left the shop. R., Vol. I, at 278. Even affording Mr. Sedillo the most favorable inference arising from these notes, they establish at the most that *Mr. Sedillo* considered Ms. Chacon a potential alibi witness. They fail to reflect "the [potential] content of her testimony such as when [she] saw him at the shop, for how long, or for what reason." *Id.* at 739 n.4.

refused to answer counsel's inquiries because "she did not know anything," *id.* at 643, but that she nonetheless "would have come forward if she knew she could have helped the Defendant," *id.* at 644. Again, nothing here suggests that counsel understood or knew the facts underlying Ms. Chacon's potential testimony. Indeed, if counsel had elected to subpoena Ms. Chacon without knowledge of the content of her potential testimony—given her lack of cooperation and resistance—one conceivably could have asserted that counsel was acting imprudently because he had no way of knowing whether or not her testimony would backfire on Mr. Sedillo.

The state district court found that it was not "objectively unreasonable for [Mr. Sedillo's] attorney not to subpoena or call Yvette Chacon[,] . . . considering her lack of cooperation and counsel's inability after two efforts . . . to find out what she knew." *Id.* at 645. The district court agreed, finding that the state court's rejection of Mr. Sedillo's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, *Strickland*, and was not an unreasonable determination of the facts in light of the evidence presented.

We discern no error in this conclusion. Reasonable jurists could not debate the district court's resolution of this claim. Counsel cannot be faulted for failing to subpoena a potential alibi witness when, despite diligent investigation, the content of that witness's testimony was not evident. Consequently, Mr. Sedillo is not entitled to a COA on his ineffective assistance of counsel claim.

**B.    Juror Disqualification**

Mr. Sedillo also requests a COA on the issue of whether the New Mexico

Supreme Court's resolution of his juror-bias claim—that is, its failure to require

the removal of a juror for cause—violated his constitutional rights.[2]  This claim

implicates Mr. Sedillo's rights under the Sixth and Fourteenth Amendments.  *See,*

*e.g.*, *Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006).  The New Mexico

Supreme Court rejected his argument on appeal:

> [Mr. Sedillo] argues . . . that the district court erred in refusing
> to strike juror Sally Johnston for cause, because she was
> previously employed by the prosecutor while he was in private
> practice.  The record reveals that the prosecutor who conducted
> voir dire, Jim Foy, was substituting for the prosecutor who
> actually tried the case.  Johnston explained that she was
> employed by Foy for two years, and during that time she worked
> on only one case.  Though she conceded that they worked
> together "pretty closely," she assured the court that she could be
> fair and impartial, even if the question of guilt was close, and
> that she would look at all of the facts before making a decision.
> In light of these answers and the fact that Foy did not continue to
> prosecute the case, we conclude the district court did not abuse
> its discretion in denying the challenge for cause.

R., Vol. I, at 51 (N.M. Supreme Ct. Decision, filed Jul. 14, 2005).  The magistrate

---

[2]    We operate on the assumption that Mr. Sedillo exhausted his juror-bias claim.  In its response to Mr. Sedillo's federal habeas petition, the State expressly conceded that the juror-bias claim that Mr. Sedillo presented "to the highest state court . . . ha[d] been exhausted."  R., Vol. I, at 65 (Br. in Supp. of Resp't's Mot. to Dismiss, filed Aug. 25, 2006); *see* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

judge found, and the district court agreed, that Mr. Sedillo had failed to "rebut the presumption of correctness given to the trial court's impartiality determination" and to show that the New Mexico Supreme Court's decision was contrary to, or an unreasonable application of, federal law. *Id.* at 751.

Before us, Mr. Sedillo appears to be attacking the district court's conclusion on the grounds that it applied the wrong legal standard when assessing the reasonableness of the New Mexico Supreme Court's decision. Specifically, he argues that both the New Mexico Supreme Court and the federal district court "ignored altogether federal jurisprudence with respect to the 'implied bias' doctrine." Aplt. Opening Br. at 20.

The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law. *United States v. Wood*, 299 U.S. 123, 133 (1936). As we have discussed this doctrine, it involves an objective legal inquiry that "turns on an . . . evaluation of the challenged juror's experiences and their relation to the case being tried." *Gonzales v. Thomas*, 99 F.3d 978, 987 (10th Cir. 1996). Unlike actual bias—which presents a factual question—"[w]hether implied bias exists in a juror is a legal determination." *Id.* It may be established, for example, where "the juror is an actual employee of the prosecuting agency, . . . a close relative of one of the participants in the trial or . . . a witness or somehow involved in the criminal transaction." *Id.* (quoting *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor,

J., concurring)) (internal quotation marks omitted). "A finding of implied bias is appropriate when the juror, although she believes that she can be impartial, is so closely connected to the circumstances at issue in the trial that bias is presumed." *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1261 (10th Cir. 1999), *abrogated in part on other grounds as stated in United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006).

We are disinclined, however, to reach Mr. Sedillo's implied-bias contention. Neither Mr. Sedillo's pro se habeas petition nor his pro se amended habeas petition—construed with maximum liberality—revealed that his juror-bias claim was predicated on a theory of implied bias. Theories or claims not raised in a habeas petition are ordinarily deemed waived. *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Parker raises several other alleged failures of counsel to object at trial, all of which he has waived by failing to assert them in his district court habeas petition."); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000) (where the "[p]etitioner did not make [an] argument in his revised habeas petition[,] . . . this court need not consider it"); *see also Thompkins v. McKune*, No. 11-3022, 2011 WL 3555415, at *5 (10th Cir. Aug. 12, 2011) (unpublished) ("[Petitioner] waived this argument by failing to assert it in his federal habeas petition."). And Mr. Sedillo has offered us no reason to deviate from our usual practice regarding waiver.

In light of this omission, it is not surprising that the magistrate judge

-14-

clearly did not interpret Mr. Sedillo as putting forward a theory of implied bias. Instead, it construed his argument as one based on alleged actual bias and proceeded to determine whether the New Mexico Supreme Court's failure to require the removal of the juror for cause because she was actually biased was contrary to, or an unreasonable application of, clearly established federal law. In his objections to the magistrate judge's report, Mr. Sedillo did hint at the possibility that his juror-bias claim extended beyond a theory of actual bias. He stated that "[t]here [was] a probability of 'presumption of prejudice'" in Ms. Johnston's ability to serve as a juror because she "would feel obligated to [the] prosecution attorneys." R., Vol. I, at 222 (Pet'r's Objs. to Mag. J. Prop. Findings & Recommended Disposition, filed Apr. 5, 2007). Conceivably, this statement could be construed as advancing an argument of implied bias—*viz.*, a contention that, despite Ms. Johnston's assertions to the contrary, she was objectively unable to serve as a juror as a matter of law in light of her prior relationship with the prosecutor conducting voir dire. However, even if this were so, such a contention would have come too late. Arguments advanced for the first time in an objection to a magistrate judge's report are waived. *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."); *see also San Roman v. Vaughn*, No. 11–6103, 2011 WL 4509488, at *4 n.5 (10th Cir. Sept. 30, 2011) (unpublished) (finding an argument waived where the petitioner did not

-15-

raise it until filing objections to the magistrate judge's report recommending dismissal of his petition).

Moreover, as the district court noted, Mr. Sedillo "cite[d] no law to support this standard," R., Vol. I, at 751, of a presumption of prejudice. In other words, Mr. Sedillo cited no legal authority that would have alerted the district court to any purported theory of implied bias. Thus, quite reasonably, the district court—like the magistrate judge—construed the gravamen of Mr. Sedillo's juror-bias claim to be a contention of actual bias—that is, a contention that the New Mexico Supreme Court erred in failing to conclude that the juror (Ms. Johnston) was actually biased by virtue of her relationship with the prosecutor who did the voir dire. Under this view of Mr. Sedillo's argument, the district court concluded that the magistrate judge was correct in finding that Mr. Sedillo's juror-bias claim was without merit because the New Mexico Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Because of Mr. Sedillo's repeated waivers, we are disinclined to reach the merits of his implied-bias argument.

Even were we to do so, however, we would conclude that reasonable jurists could not debate the district court's resolution of Mr. Sedillo's juror-bias claim because the New Mexico Supreme Court's decision was neither contrary to nor an

-16-

unreasonable application of clearly established federal law.[3]  As an initial matter,

we are called upon to determine whether a juror-bias argument grounded upon an

implied-bias theory in this factual context has a footing in clearly established

federal law.  As we have made clear, "[w]hether the law is clearly established is

*the* threshold question under § 2254(d)(1)."  *House v. Hatch*, 527 F.3d 1010, 1015

(10th Cir. 2008).  Although *House* casts doubt on the matter, *see id.* at 1016, we

are content to assume without deciding that an implied-bias theory does fall

within the ambit of clearly established federal law in this case,[4] *see Brooks v.*

*Dretke*, 444 F.3d 328, 329 (5th Cir. 2006) ("We maintain that the doctrine of

implied bias is 'clearly established Federal law as determined by the Supreme

---

[3]       Mr. Sedillo has not suggested that the New Mexico Supreme Court
failed to adjudicate his juror-bias claim on the merits, nor has he objected to the
district court's application of the deferential standards of AEDPA.  Therefore, we
apply those standards here.  We inquire into whether the reasoning or result of the
New Mexico Supreme Court's decision contradicts clearly established Supreme
Court law.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) (noting that "[a]voiding
these pitfalls [i.e., the grounds for error under the "contrary to" portion of §
2254(d)(1)] does not require citation of our cases—indeed, it does not even
require *awareness* of our cases, so long as neither the reasoning nor the result of
the state-court decision contradicts them"); *Aycox v. Lytle*, 196 F.3d 1174, 1177
(10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its
reasoning is not expressly stated.").

[4]       In support of his arguments, Mr. Sedillo relies primarily on our
decision in *Gonzales*, where we recognized that a defendant may in some
instances challenge a prospective juror based upon allegations that he or she is
impliedly biased.  *See* 99 F.3d at 985–87.  Although *Gonzales* does rely on Justice
O'Connor's concurrence in *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring),
Mr. Sedillo does not cite to any controlling precedent of the Supreme Court to
support his argument.

Court.'" (quoting 28 U.S.C. § 2254(d)(1))), because that assumption has no impact on the outcome.

In short, Mr. Sedillo cannot demonstrate that the New Mexico Supreme Court's decision is contrary to, or an unreasonable application of, clearly established federal law. In making his argument, Mr. Sedillo does not point to one *Supreme Court* case that would suggest that the New Mexico Supreme Court's resolution of his juror-bias claim was unreasonable, and it is the Supreme Court's law that is the focus of our AEDPA inquiry. *See* 28 U.S.C. § 2254(d)(1) (noting that the AEDPA inquiry is whether the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*" (emphasis added)); *see also Teniente v. Wyo. Attorney Gen.*, 412 F. App'x 96, 105 (10th Cir. 2011) ("It should not be forgotten that it is *that* law [of the Supreme Court]—and not ours—that defines the boundaries of clearly established federal law for AEDPA purposes.").

To be sure, we may look to the precedent of the lower federal courts in attempting to discern when a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law as defined by the Supreme Court. *See Ouber v. Guarino*, 293 F.3d 19, 26 (1st Cir. 2002) ("The AEDPA also requires that the relevant legal rule be clearly established in a Supreme Court holding, rather than in dictum or in holdings of lower federal

-18-

courts. This does not mean, however, that other federal court decisions are wholly irrelevant to the reasonableness determination." (citation omitted)); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999) (en banc) ("[W]e do not believe federal habeas courts are precluded from considering the decisions of the inferior federal courts when evaluating whether the state court's application of the law was reasonable."); *see also Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004) ("Although lower federal court and state court precedent may be relevant when that precedent illuminates the application of clearly established federal law as determined by the United States Supreme Court, if it does not do so, it is of no moment."); *cf. Teniente*, 412 F. App'x at 105 (assessing the "debate among reasonable jurists of the federal courts" regarding the content of clearly established Supreme Court law, in attempting to resolve an AEDPA inquiry). In this regard, we note that Mr. Sedillo is not prohibited from relying, as he does, on our implied-bias precedent. But that reliance in unavailing.

In particular, Mr. Sedillo cites the portion of *Gonzales* that draws upon Justice O'Connor's concurrence in *Phillips*, *supra*. *See Gonzales*, 99 F.3d at 987. That concurrence suggests that implied bias may be established where, for example, "the juror is an actual employee of the prosecuting agency . . . or somehow involved in the criminal transaction." *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring). Guided by the concurrence, however, we emphasized in *Gonzales* that "[t]he implied bias doctrine should not be invoked lightly." 99

F.3d at 987.  It "must be reserved for those 'extreme' and 'exceptional' circumstances that 'leav[e] serious question whether the trial court . . . subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice.'"  *Id.* (alteration in original) (quoting *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring)).

Mr. Sedillo has not identified a case decided by a lower federal court that has found implied bias on facts such as these.  More specifically, Mr. Sedillo has not identified any precedent of the lower federal courts that directly supports his contention (or even indirectly supports it by analogy) that the New Mexico Supreme Court's decision is contrary to or an unreasonable application of clearly established Supreme Court law.  And our reading of lower-court precedent does not avail Mr. Sedillo.  For example, it is notable under the facts here that Ms. Johnston worked with Mr. Foy "while he was in private practice," not during the time she served on the jury.  R., Vol. I, at 51.  In other words, she was not an "actual employee of the prosecuting agency."  *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring).  Under our precedent, it is far from clear that a prospective juror's *prior working relationship* with a prosecutor who does not actually try the case, standing alone, would be enough to satisfy the demanding showing for implied bias.  *See Gonzales*, 99 F.3d at 989–91 (declining to presume as a matter of law that a juror in a rape trial is impliedly biased merely because she was herself the victim of a different rape); *cf. Burton v. Johnson*, 948 F.2d

1150, 1159 (10th Cir. 1991) (presuming bias in a case where the defense was battered-wife syndrome and the challenged juror suffered from similar "abuse, both mental and physical, [which] continued over a long period of time"). In other words, it is far from clear that the "average person in the position of [Ms. Johnston] . . . would be prejudiced," *Cerrato-Reyes*, 176 F.3d at 1260–61 (quoting *United States v. Torres*, 128 F.3d 38, 45 (2d Cir. 1997)) (internal quotation marks omitted), or that she had "such a close connection to the circumstances at hand that bias must be presumed." *Gonzales*, 99 F.3d at 987 (quoting *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988)) (internal quotation marks omitted). Moreover, case law from other circuits is similarly unhelpful for Mr. Sedillo. *See Ray v. Johnson*, 196 F.3d 1257, No. 98-10659, 1999 WL 800173, at *1 (5th Cir. Sept. 20, 1999) (per curiam) (unpublished table case) (stating that a "friendship with the victim, even a close friendship, is not sufficient to imply bias to a juror"); *Treesh v. Bagley*, 612 F.3d 424, 437 (6th Cir. 2010) (finding no ineffective assistance of counsel for failing to strike a juror for cause where the juror previously was in a course taught by the prosecutor because the record did not demonstrate implied bias); *see also Cerrato-Reyes*, 176 F.3d at 1261 (collecting cases from "[o]ther circuits" that "have refused to find implied bias").

Mr. Sedillo contends that Mr. Foy "was the elected District Attorney whose name appear[ed] on the Criminal Information charging Mr. Sedillo with murder." Aplt. Opening Br. at 20. But Mr. Sedillo fails to show how this fact is legally

significant in this case. Mr. Foy did not actually try the case; he only filled in for another prosecutor during the voir dire. There are no facts suggesting that Ms. Johnston had any prior knowledge about the issues in the case, or felt any allegiance to the prosecution. All that the record shows is that she and the prosecutor who conducted the voir dire had worked together before in another context, and not while he was employed by the State.

Consequently, the New Mexico Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), and reasonable jurists could not debate the district court's resolution of Mr. Sedillo's juror-bias claim.

## CONCLUSION

For the foregoing reasons, we **DENY** Mr. Sedillo's application for a COA and **DISMISS** his appeal.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge